Filed
D.C. Superior Court
10/08/2021 09:59AM
Clerk of the Court

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| GRACE BRIDWELL,<br>111 Wacker, Apartment 2709<br>Chicago, IL 60601<br><br>and<br><br>PHILIP COOPER,<br>111 Wacker, Apartment 2709<br>Chicago, IL 60601<br><br>*Plaintiffs,*<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>Serve: CT Corporation System<br>       1015 15th St. NW<br>       Suite 1000<br>       Washington, D.C. 20005<br><br>and<br><br>RASIER, LLC,<br>Serve: CT Corporation System<br>       1015 15th St. NW<br>       Suite 1000<br>       Washington, D.C. 20005<br><br>and<br><br>ERIC WILLIAMS,<br>9828 Bolton Village Court<br>Fairfax, Virginia 22302<br><br>*Defendants.* | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | 2021 CA 003620 V |

## COMPLAINT

1.    The plaintiffs Grace Bridwell and Philip Cooper bring this action to recover all damages

Exhibit A

arising from orthopedic and neurologic injuries Ms. Bridwell suffered in an automobile/pedestrian crash on December 14, 2020, which was caused by the defendants' negligence, carelessness, and/or recklessness.

2. Plaintiffs Grace Bridwell and Philip Cooper are residents of Illinois married to each other in 2018.

3. Defendant Uber Technologies, Inc., ("Uber"), is a company authorized to conduct business, and which regularly conducts business, in the District of Columbia.

4. Defendant Rasier, LLC, ("Rasier"), is a company authorized to conduct business, and which regularly conducts business, in the District of Columbia. Rasier, which also operates as Rasier-D.C., L.L.C., is a wholly owned subsidiary of Uber.

5. Defendant Eric Williams is a resident of Virginia. At the time of the incident, Mr. Williams was an employee of defendants Uber and Rasier, and he was acting within the course and scope of his employment with them.

6. This incident occurred in Washington, D.C. This Court has jurisdiction over this matter pursuant to D.C. Code §11-921 (2001).

## FACTS: UBER AND RASIER

7. Uber, through its subsidiary Rasier, is a car service that provides drivers to customers on demand through a cell phone application, or "app," in cities around the world.

8. Uber contends that its drivers are independent contractors, but in fact Uber and its subsidiary Rasier have a right to control drivers' conduct in the essential aspects of their work to such an extent that Uber and Rasier are the employer-in-fact of drivers such as their co-defendant in this case, Eric Williams.

9. The Uber app for passengers is free to download and install on a smartphone.

10. Uber dictates the fares that are charged by its cars (as in a traditional taxi, the total fare includes a "base fare," as well as additional charges per unit of distance and time); then, it pays its drivers 75-80% of the fares collected, and it keeps the other 20- 25% for itself.

11. Uber drivers do not collect any form of payment directly from consumers; rather, they receive payment for their work for Uber *via* weekly direct deposit.

12. Uber drivers do not have the authority to retroactively adjust a fare upwards or downwards; in order to adjust a fare, they must request that Uber do so at its discretion.

13. If Uber's ride payment technology malfunctions, Uber drivers do not have the authority to accept cash from passengers; rather, they must ask Uber for reimbursement.

14. In order to drive for Uber, drivers must use a GPS-enabled map function that Uber builds into its app. Among other things, this map function does the following:

   a. Shows Uber drivers real-time "heat maps" of where demand for rides is highest at a given time;

   b. Shows Uber drivers the starting points of their assigned rides;

   c. Shows Uber drivers the destinations of their assigned rides;

   d. Directs Uber drivers, *via* turn-by-turn GPS directions, on the route to follow in order to pick up their assigned rides; and

   e. Directs Uber drivers, via turn-by-turn GPS directions, on the route to follow from pickup to destination.

15. Upon threat of termination, Uber, acting directly and through its subsidiary Rasier, subjects its drivers to a host of specific requirements concerning how they perform their driving duties, including, but not limited to, the following:

   a. Drivers must drive four-door vehicles no more than 10 years old;

3

    b.    Drivers must maintain their vehicles in "good" mechanical condition with no cosmetic damage;

    c.    Drivers must maintain their cars in an acceptably clean condition;

    d.    Drivers must maintain a ride request acceptance rate that is acceptable to Uber;

    e.    Drivers must respond to ride requests within a timeframe that is acceptable to Uber;

    f.    Drivers must maintain a passenger review rating (a "star rating") that is acceptable to Uber;

    g.    Drivers must not call passengers who have requested a ride and are waiting to be picked up with a frequency that Uber determines is "excessive;"

    h.    Drivers must display the Uber logo on their vehicles; and

    i.    Drivers must remove from the vehicle any non-Uber corporate branding.

16. The above facts show that Uber and Rasier had a right to control their drivers such as the defendant Williams, sufficient to make them the employer-in-fact of Williams.

17. In addition, through several forms of media, Uber represents to consumers (including specifically to consumers in the District of Columbia Metropolitan Area) that it subjects its drivers to rigorous screening procedures prior to allowing them to drive for Uber.

18. Uber also represents to consumers that it continues to monitor the quality of its drivers on an ongoing basis through a rating system.

19. Upon information and belief, Uber drivers undergo only a minimal in-person interview as part of the hiring process, and the training they are given amounts to little more than watching a fifteen-minute video.

## INJURY FACTS

20. On the evening of December 14, 2020, Grace Bridwell, a 28-year-old attorney working full-time in the tax department of a large law firm, was walking eastbound on the north side of Pennsylvania Avenue NW. At approximately 7:52 P.M., Ms. Bridwell reached the intersection with 12th St. NW. With a walk sign showing, she began crossing 12th St. NW, within the crosswalk.

21. At the same time, the defendant Eric Williams was driving his Toyota Rav4 westbound on Pennsylvania Ave. NW, preparing to make a right turn onto northbound 12th St. NW.

22. At the time of the collision, Eric Williams was operating his vehicle as part of Uber's rideshare program. Mr. Williams had a passenger, Elizabeth Leacy Burke, who had hailed Mr. Williams through the Uber app, and who was riding in the back seat at the time of the collision.

23. At approximately 7:52 P.M., Eric Williams, facing a green light, made a right turn, from the right lane of Pennsylvania Ave. NW onto 12th St. NW, and knocked down Ms. Bridwell as she was walking in the crosswalk, causing serious and permanent injuries to her.

24. Police cited Eric Williams for colliding with a pedestrian and found that Grace Bridwell did not take any improper actions to cause the collision.

## DEFENDANTS' NEGLIGENCE

25. Eric Williams had a duty to operate his vehicle in a reasonable and prudent manner.

26. Eric Williams negligently failed to check for any pedestrians crossing 12th St. NW before he turned onto that street from Pennsylvania Ave. NW., and negligently failed to yield the right of way to Ms. Bridwell as she walked in the crosswalk.

27. Mr. Williams is negligent *per se* for violating District of Columbia regulations including the following sections of the D.C. Code of Municipal Regulations (DCMR):

    a. 2208.11: "A driver of any vehicle shall stop and give the right-of-way to a pedestrian who has begun crossing on the "WALK" signal to continue to the opposite sidewalk or safety island, whichever is nearest."

    b. 2302.2: "Pedestrians facing a "WALK" signal may proceed across the roadway in the direction of the signal and shall be given the right-of-way by the drivers of all vehicles."

    c. 2300.2: "Notwithstanding the provisions of this chapter and of Chapters 12 and 21, every operator of a vehicle shall exercise due care to avoid colliding with any pedestrians . . . ."

28. The above-cited DCMR sections are intended to protect the safety of pedestrians such as Ms. Bridwell and to prevent collisions such as happened here.

29. Eric Williams's negligence/negligence per se was the direct and proximate cause of the collision with Grace Bridwell.

30. Uber/Rasier are liable for Eric Williams's negligence because he was at all times relevant acting within the course and scope of his employment with Uber/Rasier.

## DAMAGES

31. As a direct and proximate result of the defendants' negligence, Grace Bridwell suffered and continues to suffer, serious, permanent personal injuries and damages

32. Mr. Williams's car struck Ms. Bridwell in her right leg and knocked her to the pavement, where she hit her head and lost consciousness for about ten minutes.

33. Ms. Bridwell was taken by ambulance to Washington Hospital Center. X-rays revealed tibial plateau fractures requiring the surgical placement of a metal plate and ten screws (open reduction internal fixation) in the upper part of her right tibia.

34. The knee/tibia injury left Ms. Bridwell unable to walk at all for twelve weeks. After extensive and still-ongoing physical therapy, she regained the ability to walk but still has not recovered pain-free ambulation. She was a cross-country runner in college and high school.

35. The blow to Ms. Bridwell's head caused traumatic brain injury which has affected her physically, mentally and emotionally. Her head received a large gash in the left parietal area of her scalp that took several months to heal, and she continues to have pain in this area of her head. Mentally, she has experienced severe issues with concentration, memory, thinking, and decision making. Physically, she has experienced ongoing severe dizziness and loss of balance, moderate headaches and vision problems, severe fatigue, and severe difficulty sleeping. Emotional issues include severe anxiety and depression. Some of these have waned in severity with extensive therapy, but she still experiences many problems with brain functioning. This has affected her ability to work as a tax attorney.

36. Defendants are jointly and severally liable for all injuries and damages suffered by Grace Bridwell, including those for:

    a. the extent and duration of any physical injuries sustained by the plaintiff;

    b. the effects that any physical injuries have on the overall physical and emotional well-being of the plaintiff;

    c. physical pain and emotional distress that the plaintiff has suffered in the past;

      d.      physical pain and emotional distress that the plaintiff may suffer in the future;

      e.      inconveniences the plaintiff has experienced;

      f.      inconveniences the plaintiff may experience in the future;

      g.      medical expenses incurred by the plaintiff;

      h.      medical expenses that the plaintiff may incur in the future;

      i.      loss of earnings incurred by the plaintiff; and

      j.      loss of earnings or earning capacity that the plaintiff will likely incur.

37. Philip Cooper makes claim for a loss of consortium, due to damage to his marital relationship as a result of the defendants' negligence.

WHEREFORE, plaintiffs ask for judgment against the defendants, jointly and severally, in an amount exceeding the jurisdictional requirements of this Court and conforming with the proof of damages at trial.

Respectfully submitted,

/s/ Patrick A. Malone
Patrick A. Malone, Esq. (Bar No. 397142)
Daniel C. Scialpi, Esq. (Bar No. 997556)
Patrick Malone and Associates, PC
1310 L St. NW, Suite 800
Washington, DC  20005
Phone:  (202) 742-1500
Fax:  (202) 742-1515
dscialpi@patrickmalonelaw.com

## JURY DEMAND

The plaintiffs demand a trial by jury.

/s/ Patrick A. Malone
Patrick A. Malone, Esq.